## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

Jane Doe,

*Plaintiff,*

v.

Wesleyan University,

*Defendant.*

Civ. No. 3:19-cv-01519 (JBA)

October 8, 2021

## RULING ON PLAINTIFF'S MOTION TO COMPEL [ECF No. 106]

The plaintiff, Jane Doe,[1] has moved the Court for an order compelling the defendant, Wesleyan University, to respond to two interrogatories and eight requests for production. (Pl.'s Mot. to Compel, ECF No. 106; *see also* Memo. of L. in Supp. of Pl.'s Mot. to Compel, ECF No. 106-22, at 9-11 (hereinafter "Memo.").) For the following reasons, the plaintiff's motion is **GRANTED IN PART AND DENIED IN PART** as set forth more fully in Section III below.

### I.   BACKGROUND

The plaintiff is a former Wesleyan student who enrolled at the university in the fall of 2016. (Am. Compl., ECF No. 50, ¶ 44 ("Compl."); Ans. & Aff. Defs. ("Ans."), ECF No. 107, ¶ 44.) After completing her freshman year, she signed up for three summer courses taught by Prof. Andrea Roberts: (1) Introductory Chemistry I, or "CHEM 141," taught from May 29 to July 1, 2017; (2) Introductory Chemistry II, or "CHEM 142," taught from July 6 to August 4, 2017; and (3) an associated laboratory course. (Compl. ¶ 47, Ans. ¶ 47.) She took exams throughout the two summer sessions, and took her CHEM 142 final exam on August 4, 2017. (Compl. ¶ 51, Ans. ¶

---

[1]       The plaintiff has been granted leave to proceed under a fictitious name. (ECF No. 75.)

51.)  She says that she then "returned home to enjoy a brief break with her family before returning to Wesleyan for her sophomore year."  (Compl. ¶ 51.)

Shortly after arriving home, the plaintiff learned that Prof. Roberts had accused her of cheating.  (Compl. ¶ 56, Ans. ¶ 56.)  Wesleyan uses a computerized learning management system called "Moodle" (Compl. ¶ 43, Ans. ¶ 43), and Prof. Roberts alleged that the plaintiff accessed the Moodle site during her exams.  (Compl. ¶¶ 56, 58.)  A university Honor Board proceeding ensued, the investigation and disposition of which involved more than a dozen people ranging from student board members to the Vice President for Student Affairs.  (*See* Compl. ¶ 240) (describing composition of Honor Board).  On August 21, 2017, the board decided that the plaintiff "more likely than not" had cheated on five of her nine exams.  (Compl. ¶ 272, Ans. ¶ 272.)  After two unsuccessful appeals, Wesleyan expelled her.  (Compl. ¶¶ 379, 391, Ans. ¶¶ 379, 391.)

The plaintiff filed this lawsuit on September 29, 2019.  (Init. Compl., ECF No. 1.)  She alleged, among other things, that Wesleyan had promised her a fair disciplinary process in its Student Handbook, and that it broke that promise when it "fail[ed] to comply with its obligations, standards, policies and procedures set forth in the Handbook."  (Comp. ¶ 470.)  She also alleged that Moodle was rife with "bugs" and "glitches" (*id.* ¶ 482), and she claimed that Wesleyan acted negligently when it "failed to properly install, implement and administer Moodle."  (*Id.* ¶ 495.)

Wesleyan moved to dismiss the entire complaint under Rule 12(b)(6) (Def.'s Mot. to Dismiss, ECF No. 54), and Judge Arterton granted the motion in part and denied it in part.  (Ruling, ECF No. 90, at 24.)  The judge allowed a portion of the contract breach claim to proceed, "[i]n light of the specific procedural violations Plaintiff alleges to support her claims that Wesleyan failed . . . to afford her a fair process."  (*Id.* at 15.)  And she allowed the plaintiff's "reckless and wanton misconduct" claim to proceed as well, because the "allegation about the ways Wesleyan

repeatedly and intentionally violated its own policies and procedures in an academic misconduct adjudication and how she was disadvantaged as a result could plausibly rise to the level of wanton and reckless misconduct." (*Id.* at 22.) But she dismissed most of the plaintiff's other claims, including the negligence claim relating to the installation, implementation, and administration of Moodle. (*Id.* at 16.) "Although Plaintiff's Amended Complaint alleges that Moodle had known 'bugs' that Wesleyan failed to address, it lacks any description of how the bugs led to the production of faulty Moodle logs on which Wesleyan relied in expelling her." (*Id.*)

Wesleyan then answered the complaint, and it asserted several affirmative defenses. (Ans., pp. 39-40.) In its fifth affirmative defense, Wesleyan asserted that the plaintiff's "claims are precluded" because her "injuries and damages, if any, were caused in whole or in part by [her] own intentional acts, recklessness, carelessness and/or negligence." (*Id.* at 39.) Wesleyan alleged that the plaintiff "cheated on examinations," "lied about cheating," "attempted to cover-up her cheating," and "never admitted or accepted responsibility for her cheating." (*Id.* at 39-40.)

The plaintiff served the interrogatories and requests for production at issue on February 24, 2020. (Exs. A & B to the Decl. of James E. Figliozzi ("Figliozzi Decl."), ECF Nos. 106-2, 106-3.) Each contested discovery request will be discussed more fully below, but in summary, the two interrogatories asked Wesleyan to identify all electronic devices "used . . . to transmit documents and communications" about the allegations in the complaint, and all devices "used by Wesleyan in the administration of Moodle." (Ex. A to Figliozzi Decl., ECF No. 106.2, at 4-5.) Two of the eight contested requests for production sought documents concerning Honor Board cases other than the plaintiff's, presumably to explore her allegation that Wesleyan treated her more harshly than other, similarly situated students. (Ex. B to Figliozzi Decl., ECF No. 106-3, at 3-4; Compl. ¶

395.)  The other six contested requests for production concerned Moodle in one way or another. (Ex. B to Figliozzi Decl., ECF No. 106-3, at 4.)

Wesleyan responded to the plaintiff's interrogatories and requests for production on June 9, 2020.  (Exs. F & G to Figliozzi Decl., ECF Nos. 106-7, 106-8.)  As with the requests themselves, Wesleyan's responses will be detailed in Section II below.   In summary, however, Wesleyan objected to the two interrogatories on the ground that the identity of its electronic devices "bears no relevance to the issues presented in this case," and would be "unduly burdensome" to assemble. (Ex. F to Figliozzi Decl., ECF No. 106-7, at 4-5.)  It objected to the two document requests about other Honor Board cases on the ground that they were temporally overbroad; sought "data that involves different students, faculty and decision-makers that is wholly irrelevant;" and sought "personal information that is protected by Constitutional, statutory, and other common law privacy rights and protections."  (Ex. G to Figliozzi Decl., ECF No. 106-8, at 3-4.)  And it objected to the six Moodle-related document requests on the ground that they were temporally overbroad, irrelevant, and unduly burdensome.  (*Id.* at 4-7.)

The plaintiff filed her motion to compel almost a year later.  (Pl.'s Mot. to Compel, ECF No. 106.)  Her counsel attributes the delay to a protracted meet-and-confer process (*see generally* Figliozzi Decl., ECF No. 106-1), but Wesleyan suspects that there was a different reason.  It says that its own discovery efforts have uncovered indisputable proof that the plaintiff cheated on her exams, and also proof that the plaintiff "failed to preserve the key piece of evidence in the case – a forensic image of the phone she used to cheat."  (Def.'s Opp'n to Pl.'s Mot. to Compel (hereinafter "Opp'n"), ECF No. 111, at 1-2.)  Wesleyan therefore argues that the plaintiff's motion was nothing more than "a hasty strategy to get in front of" its own discovery motions "and divert the Court's attention from the evidence of cheating."  (*Id.* at 2.)  Stated another way, it calls the

plaintiff's motion "nothing more than an impulsive ploy to pivot the Court's attention from her own egregious conduct." (*Id.* at 5.)

The plaintiff filed a reply brief (Reply, ECF No. 114), and after referral by Judge Arterton, the undersigned held oral argument. The motion is therefore ripe for decision.

## II.  DISCUSSION

Before individually addressing the ten contested discovery requests, the Court will set forth some principles of general applicability. Subject to the proportionality requirement and other limitations set forth in Rule 26, a party may discover relevant, nonprivileged information in the other party's possession. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Moreover, information "within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Under Rule 26(b)(1), the scope of discovery is broad. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (characterizing Rule 26(b)(1) as "obviously broad" and "liberally construed"). At its core, it includes information that is logically relevant to a claim or defense that has been pled in the case – in other words, information that has "any tendency to make the existence of any fact . . . more or less probable than it would be without the evidence," where that fact is "of consequence in determining the action." *In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) (quoting Fed. R. Evid. 401). Yet it can also include "[a] variety of types of information not directly pertinent to the incident in suit." Fed. R. Civ. P. 26 advisory committee's note to 2000 amendments. For example, "other incidents of the same type, or involving the same product, could be properly discoverable" in an appropriate case. *Id.* "Information about organizational arrangements or filing systems of a party" can also sometimes be discoverable "if likely to yield or lead to the discovery of admissible information." *Id.*

Moreover, the scope of discovery has long included information about "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments (explaining that these words no longer appear in Rule 26(b)(1) only because "[d]iscovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples"). "In each instance, the determination of whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments.

The burden of demonstrating relevance initially rests with the party seeking discovery. *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016), *as amended* (June 15, 2016). "Once the requesting party has made a *prima facie* showing of relevance," however, "it is up to the responding party to justify curtailing discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012)). Put differently, once the moving party shows that the requested information "bears on, or . . . reasonably could lead to other matter that could bear on, any issue" in the case, "[t]he party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

To resist relevant discovery on grounds of undue burden, a party must ordinarily demonstrate that burden with an affidavit or other proof. "A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad,

burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden.'" *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y. 2012) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).   "[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *N. Shore-Long Island Jewish Health Sys., Inc.*, 325 F.R.D. at 48 (citations and internal quotation marks omitted).   "Further, for a burdensomeness objection to be sustained, a motion to compel on this ground must be opposed by an affidavit of a person with knowledge of the record keeping system with the requested party explaining in reasonable detail the factual basis for such an objection." *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69 (W.D.N.Y. 2003); *see also Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014) (same); *Huminski v. Stop & Shop Supermarket Co.*, No. 16-cv-1136 (RNC) (DFM), 2017 WL 2779468, at *1-2 (D. Conn. Jun. 27, 2017) (collecting cases).

### A.      Interrogatories 3 and 4 - Identification of Devices

Interrogatory No. 3 asked Wesleyan to "[i]dentify all electronic devices used by Defendant (including, but not limited to, electronic devices used by Wesleyan University faculty members, staff members, administrators and other employees) to transmit documents and communications relating or referring to the allegations stated in the Complaint, including, but not limited to Wesleyan devices, Wesleyan-issued devices, and personal devices utilized to conduct Wesleyan business."  (Ex. A to Figliozzi Decl., ECF No. 106-2, at 4-5.)  Wesleyan objected on the ground that the interrogatory was "entirely irrelevant to the issues in this case," and on the ground that "complying with this request will impose an enormous and unwarranted burden."  (Ex. F to Figliozzi Decl., ECF No. 106-7, at 4.)  In an attempt to resolve the objection, the plaintiff offered

to "[l]imit this request to devices used by" twelve specific people, plus "any other members of Wesleyan's ITS department currently unknown to the Plaintiff."  (Ex. O to Figliozzi Decl. ECF No. 106-16, at 1.)  Yet even when limited in this way, Wesleyan still asserts that the interrogatory is irrelevant, and that complying with it would be unduly burdensome.  (Opp'n at 9-15.)

Interrogatory No. 4 asked Wesleyan to "[i]dentify all electronic devices used by Wesleyan in the administration of Moodle from May 1, 2017 to October 6, 2017."  (Ex. A to Figliozzi Decl., ECF No. 106-2, at 5.)  Wesleyan objected on the ground that "the term 'administration' is vague and ambiguous;" on the ground that the interrogatory "has no relevance to the issues presented in this case;" and on the ground that it was "overbroad" and would "impose an enormous and unwarranted burden."  (Ex. F to Figliozzi Decl., ECF No. 106-7, at 5.)  The plaintiff says that she offered to limit this interrogatory to "devices used by Wesleyan to administer Moodle for CHEM 141 and CHEM 142" (Memo. at 13), but Wesleyan nonetheless continues to object on grounds of irrelevance and burden.  (*See* Opp'n at 9-15.)

These two interrogatories do not seek any information at the core of the concept of relevance.  Although the plaintiff asserts that "the information sought by Interrogatories 3 and 4 would tend to make her claims, as well as her opposition to Wesleyan's defenses, more probable" (Reply at 6), she does not explain how.  She has not identified any disputed issue of material fact that would be meaningfully informed by the question of whether, for example, a particular communication was conducted over a particular smartphone or laptop.  (*See generally* Memo.)

Wesleyan suggests that the analysis should end there (*see* Opp'n at 10), but the Court disagrees because the scope of discovery is not strictly limited to information that is logically relevant to a claim or defense.  As noted above, "[i]nformation about organizational arrangements or filing systems of a party" can also be discoverable in an appropriate case "if likely to yield or

lead to the discovery of admissible information."  Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments.  And Rule 26 has long permitted discovery into "the existence, description, nature, custody, condition, and location of any documents or other tangible things."  Fed. R. Civ. P. 26 advisory committee's note to 2015 amendments.  The question, therefore, is whether Interrogatories 3 and 4 seek information that is within the permissible scope of discovery even if not directly relevant to a claim or defense in the Rule 401 sense.

The plaintiff asks the Court to approach this question as if she had only recently filed her case, and only recently begun discovery.  She says that she needs a list of Wesleyan's relevant electronic devices "to assist in developing an ESI protocol and framing further discovery demands."  (Memo. at 18.)  She adds that "[w]ithout an understanding of where the documents and communications that Wesleyan will rely upon to defend its position reside, [she] is unable to intelligently pursue a discovery strategy that will meaningfully assist in contesting Wesleyan's defenses."  (*Id.* at 16.)  But discovery in this case has been open for nearly two years (*see* Rpt. of Parties' Planning Mtg., ECF No. 24) (confirming that parties held Rule 26(f) conference on Oct. 16, 2019), and the plaintiff has already served discovery requests.  She says that she needs Wesleyan to list its devices so that she knows "where the . . . communications . . . reside," but she has already requested the communications themselves (*see* Ex. B to Figliozzi Decl., ECF No. 106-3), and Wesleyan says without contradiction that it has produced nearly 3,000 pages of responsive communications.  (Opp'n at 10.)

This situation is therefore better viewed as one in which, after having served document production requests, the inquiring party has served follow-up interrogatories to ensure that the production is complete.  "There are circumstances where such collateral discovery is warranted." *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121 (LAK) (JCF), 2014 WL 3767034, at *3

(S.D.N.Y. Aug. 14, 2014).  "In certain circumstances where a party makes some showing that a producing party's production has been incomplete, a court may order discovery designed to test the sufficiency of that party's discovery efforts in order to capture additional relevant material." *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121 (LAK) (JCF), 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (citing *Orillaneda v. French Culinary Inst.*, No. 07-cv-3206, 2011 WL 4375365, at *6-7 (S.D.N.Y. Sept. 19, 2011).  Yet where "a party seeks discovery on discovery, that party must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*."  *Kaye v. N.Y. City Health & Hosps. Comm'n*, No. 18-cv-12138 (JPO) (JLC), 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020) (internal quotation marks omitted) (quoting *Winfield v. City of N.Y.*, No. 15-cv-5326 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018)); *accord Grant v. Witherspoon*, No. 19-cv-2460 (PGG) (BCM), 2019 WL 7067088, at *1 (S.D.N.Y. Dec. 23, 2019).[2]

The record before the Court does not provide an "adequate factual basis" for requiring Wesleyan to catalog all of the devices on which its responsive communications reside.  Wesleyan represents that it produced "all relevant documents and communications regarding the claims and defenses in this case" (Opp'n at 11), and the plaintiff has come forward with no factual basis for supposing that the production is incomplete.  Inquiring parties sometimes make this showing by

---

[2]     The cases cited by the plaintiff are not to the contrary.  In *Doe v. Rollins College*, No. 6:18-cv-1069-Orl-37KRS, 2019 WL 11703980, at *5-6 (M.D. Fla. Feb. 27, 2019), the court granted a motion to compel responses to an interrogatory similar to the one the plaintiff has propounded here, but only because the responding party had rendered the identification of his electronic devices directly relevant by pleading that he had used his personal devices in key communications.  And in *Lincoln Memorial Academy v. Department of Education*, No. 8:20-cv-309-CEH-AAS, 2021 WL 1117325, at *3 (M.D. Fla. Mar. 24, 2021), the court likewise ordered a group of plaintiffs to provide a list of their electronic devices, but only after they had disobeyed a previous court order to produce the devices themselves.

identifying documents that it expected to receive but did not receive, *cf.*, *e.g.*, *Grant*, 2019 WL 7067088, at *2 (noting that "plaintiff does not identify any documents (or categories of documents) that he expected to receive in discovery but has not"), but when the Court asked at oral argument whether that was the case here, counsel responded that he "would have to take a closer review" and could not "say for certain one way or the other." (Hrg. Tr. at 24:9-13.) The plaintiff's motion for an order compelling responses to Interrogatories 3 and 4 is therefore denied on the current record, but the denial is without prejudice to renewal in the event that she develops an "adequate factual basis" through other discovery. *See, e.g., Haroun v. ThoughtWorks, Inc.*, No. 20-cv-100 (LJL), 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020) ("Plaintiff can inquire at deposition both about the documents that have been produced and those that have not been produced and can review the document production itself for obvious gaps. If it creates such a record, it may have a basis for discovery on discovery.").

**B.     Requests for Production 4 and 5 – Other Cheating Cases**

Request for Production No. 4 sought "[a]ll documents and communications referring to the number and nature of Wesleyan Honor Code violations reported to Wesleyan from January 1, 2010, to present." (Ex. B to Figliozzi Decl., ECF No. 106-3, at 4.) Wesleyan objected "to the extent that" the request sought "information which is irrelevant and overly broad." (Ex. G to Figliozzi Decl., ECF No. 106-8, at 3.) It argued that "information regarding the Honor Code violations at Wesleyan University before June 2017 or after August 2017 is overly broad as it seeks information dating back to 2010 which is well beyond the scope of any issues presented in this case." (*Id.*) It also asserted that "former students' personal information is protected by Constitutional, statutory, and other common law privacy rights and protections." (*Id.*)

Request for Production No. 5 sought, for each report identified in response to Request No. 4, "all documents and communications referring to the sanction imposed from January 1, 2020, to present." (Ex. B to Figliozzi Decl., ECF No. 106-3, at 4.) Wesleyan objected to Request No. 5 for the same reasons asserted in response to Request No. 4. (Ex. G to Figliozzi Decl., ECF No. 106-8, at 4.)

In an effort to resolve the dispute over the two requests, the plaintiff offered to limit their substantive and temporal scope. Specifically, she proposed to limit the scope of Request No. 4 to "documents/communications reflecting the charges, outcomes, and sanctions of cheating cases," and of Request No. 5 to "documents/communications noting the sanctions imposed and the reasoning behind the particular sanction's imposition for cheating cases," implicitly dropping her request for documents concerning other types of Honor Code violations. (Ex. O to Figliozzi Decl., ECF No. 106-16, at 2.) And she proposed to limit the temporal scope of the requests to "cases from 2012 to 2017," thus dropping her request for documents from 2010 and 2011. (*Id.*) Even when limited in these ways, Wesleyan continues to object to the requests. (*Id.*; *see also* Opp'n at 16-19.)

Wesleyan argues that the information sought by Requests 4 and 5 is "entirely irrelevant to the issues presented in this case" (Opp'n at 16), but the Court disagrees. The plaintiff has alleged that Wesleyan engaged in reckless and wanton misconduct "[i]n determining the sanction against" her by, among other things, "enforc[ing] a sanction that was unforeseeable and unharmonious when compared to previous instances of punishment for similar and more serious alleged misconduct." (Compl., ¶¶ 613, 623.) She has further alleged that, "[o]ut of the over 80 cheating-related disciplinary cases that [she] reviewed from the fall of 2013 through the spring of 2016, Wesleyan did not expel one single student, including students who had prior disciplinary history."

12

(*Id.* ¶ 395.)   The information sought by Requests 4 and 5 is plainly relevant to these and other allegations.  *See, e.g., Stellwag v. Quinnipiac Univ.*, No. 3:09-cv-1031 (AWT) (DFM), 2010 WL 4823355, at *1 (D. Conn. Nov. 18, 2010) (holding that information on "expulsions and dismissals" of other students "is relevant" discovery in a university disciplinary case).

Wesleyan asserts that the other students' cases would not be "sufficiently similar," but this claim is insufficient to bar the discovery that the plaintiff seeks.  To begin with, Wesleyan provides no evidence in support of its assertion – and at the discovery stage, a plaintiff is usually not required to "take the defendant's word" that the potential comparators are not comparable.  *Qamar v. Sheridan Healthcare of Conn., P.C.*, No. 3:18-cv-1359 (JBA), 2019 WL 3712202 at *2 (D. Conn. Aug. 7, 2019).  And even if Wesleyan had come forward with evidence of dissimilarity, disputes over comparability are usually resolved later in the case; they do not typically bar the plaintiff from taking the discovery in the first instance.  *E.g., id.* ("[T]he issue of whether these individuals are ultimately appropriate comparators may be addressed at the summary judgment stage.");  *Khazarian v. Gerald Metals, LLC*, No. 3:16-cv-01762 (VAB), 2017 WL 11017757, at *1 (D. Conn. Nov. 9, 2017) (declining to "address whether Mr. Lerner is an appropriate comparator for Ms. Khazarian now, in the context of a discovery dispute[,]" because "[t]he parties may raise and address these arguments at the summary judgment stage").  This of course does not mean that a plaintiff is entitled to discovery about every fellow student, however dissimilarly situated.  *Cf., e.g., Jauhari v. Sacred Heart Univ.*, No. 3:16-cv-00680 (AWT), 2017 WL 819902, at *5 (D. Conn. Mar. 2, 2017).  But in limiting her requests to students accused of cheating, the plaintiff has made a reasonable effort to avoid inquiring after obviously dissimilar cases.[3]

---

[3]      The lone case cited by Wesleyan provides no persuasive support for denying the plaintiff the comparator discovery that she seeks.  In *Wright v. Goord*, No. 04-cv-6003L, 2008 WL 2788287, at *4 (W.D.N.Y. July 15, 2008), a *pro se* prison inmate sought all documents concerning

Wesleyan also argues that the plaintiff's motion should be denied because Requests 4 and 5 are "overly broad" and "would impose a large and undue burden" (Opp'n at 16-17), but this argument cannot be accepted either.  As the Court has explained in a different ruling in this very case, a party resisting discovery on grounds of overbreadth or undue burden "has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules . . . each request is overly broad, burdensome or oppressive [by] submitting affidavits or offering evidence revealing the nature of the burden."  *Doe v. Wesleyan Univ.*, No. 3:19-cv-01519 (JBA) (TOF), 2021 WL 2525427, at *4 (D. Conn. June 21, 2021) (internal quotation marks omitted) (quoting *Vidal v. Metro-N. Commuter R. Co.*, No. 3:12-cv-00248 (MPS), 2013 WL 1310504, at *1 (D. Conn. Mar. 28, 2013)); *accord Pegoraro*, 281 F.R.D. at 128-29.  "*Ipse dixit* claim[s]" and "counsel's mere say-so" do not suffice.  *Wesleyan*, 2021 WL 2525427 *4; *see also N. Shore-Long Island Jewish Health Sys., Inc.*, 325 F.R.D. at 48 ("[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.") (citations and internal quotation marks omitted).  Where the responding party "has made no showing as to the nature and extent of the actual burden it would face in responding to" the requests, its undue burden and overbreadth objections are properly overruled. *Huminski*, 2017 WL 2779468, at *1-2.  That is the case here; Wesleyan says that requiring it to respond to Requests 4 and 5 would "impose a large and undue burden" (Opp'n at 17), but it has not demonstrated that burden through an affidavit or other competent evidence.

---

medical treatment administered to inmates who had been subjected to force within the previous eight years.  The court denied his request as "plainly overbroad and irrelevant to the claims at issue in [his] suit," without any further discussion or analysis.  *Id.*  Wesleyan cites *Wright* for the proposition that comparator discovery should be denied when the comparators "cannot be deemed sufficiently similar" (Opp'n at 16), but the Court declines to read that much into a terse, two-sentence rejection of a facially overbroad discovery request.

Finally, Wesleyan argues that the plaintiff's motion should be denied with respect to Requests 4 and 5 because responding to them would injure other students' privacy rights (Opp'n at 18), but the Court declines to accept this argument as well.  Wesleyan notes that "[t]he federal Family Educational Rights and Privacy Act protects the privacy rights of parents and children by limiting access to education records without parental consent," and it asserts that compliance with Requests 4 and 5 would violate "FERPA and other state and federal law."  (Opp'n at 18) (citing, *inter alia*, 20 U.S.C. § 1232g).  But "[c]ourts have recognized that FERPA does not create a privilege against disclosure of student records."  *Stellwag*, 2010 WL 4823355, at *1 (citing *Rios v. Reed*, 73 F.R.D. 589 (E.D.N.Y. 1977) and *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008)).  "Moreover, 'under the provisions of the statute, a school would not be subject to sanctions for disclosure of educational records covered by FERPA when such disclosure was made pursuant to a judicial order.'"  *Id.* (quoting *Ragusa*, 549 F. Supp. 2d at 291-92) (brackets omitted).

To be sure, "courts have imposed a higher burden on litigants moving to compel the disclosure of educational records," "in light of the privacy concerns embodied in FERPA."  *Id.*  In particular, they have required "the party seeking disclosure . . . to demonstrate a genuine need for the information that outweighs the privacy interests of the students."  *Rios*, 73 F.R.D. at 599.  But in *Stellwag*, the court held that this demonstration had been made when, "[b]ased on the plaintiffs' theory of the case, the disclosure of a limited number of student disciplinary files for comparison purposes [was] necessary to the plaintiffs' prosecution of the case," and where "any privacy concerns [were] significantly ameliorated by plaintiffs' agreement to redaction of personally identifying information."  *Stellwag*, 2010 WL 4823355, at *1.  That demonstration has been made here as well; the plaintiff has explained why comparator information is necessary to her

prosecution of the case, and she does not object to the redaction of all information that would personally identify the students in question.[4]

The plaintiff's motion is accordingly granted with respect to Requests 4 and 5, as limited during the parties' meet-and-confer sessions – that is, to responsive documents that (a) concern cheating allegations, as opposed to other types of Honor Code violations, and (b) are within the time period 2012-2017.  Wesleyan shall redact personally identifying information as discussed further in Section III below.

### C.    Requests for Production 6 Through 11 – Moodle Documents

Requests for Production 6 through 11 all concern Moodle in one way or another.  Requests 6, 7 and 8 seek "all documents and communications referring," respectively, to the "installation," "implementation," and "administration" of Moodle "from January 1, 2010, to present."  (Ex. B to Figliozzi Decl., ECF No. 106-3, at 4.)  Request 9 seeks "[a]ll documents and communications referring to the Moodle training received by [Wesleyan IT] staff from January 1, 2010, to present."

---

[4]      The Court also notes – as Judge Martinez did in *Stellwag* – that when the requesting party consents to the redaction of all personally identifying information in the records, FERPA may not even apply in the first instance.  *Stellwag*, 2010 WL 4823355 at *1 n.1 (quoting *Ragusa*, 349 F. Supp. 2d at 292, for the proposition that "[t]here is nothing in FERPA that would prohibit Defendants from releasing education records that had all personally identifiable information redacted"); *see also U.S. v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002) ("Nothing in . . . FERPA would prevent universities from releasing properly redacted records.").

Wesleyan also cites two Connecticut state laws in support of its privacy objections (Opp'n at 18), but as the plaintiff correctly points out, those laws do not apply to private universities. While Connecticut's Freedom of Information Act does "exempt[] names and addresses of students from" public records disclosure requirements, that exemption applies only to "[n]ames and addresses of students enrolled in any *public* school or college." Conn. Gen. Stat. § 1-210(b)(11) (emphasis added).  And Public Act 16-189 – "An Act Concerning Student Data Privacy" – encompasses only Connecticut residents enrolled at public schools in preschool through twelfth grade or special education, or "otherwise the responsibility of a local or regional board of education." Conn. Gen. Stat. § 10-234aa(9).

(*Id.*)  And Requests 10 and 11 respectively seek "[a]ll [IT] job tickets" and "[a]ll [IT] internal reports" "relating to Moodle from January 1, 2010, to present."  (*Id.*)

Wesleyan served its responses on June 9, 2020 – before Judge Arterton ruled on its motion to dismiss – and it objected to all six requests for substantially the same reasons.  (Ex. G to Figliozzi Decl., ECF No. 106-8, at 4-7.)  Observing that the "Plaintiff was alleged to have cheated using Moodle between June 2017 and August 2017," Wesleyan objected that information regarding the installation, implementation, administration, and training of staff on Moodle was "overly broad as it seeks information which is entirely irrelevant and well beyond the scope of any issues presented in the case."  (*Id.*)  It added that "requiring Wesleyan to compile 'all documents and communications' over the last ten years regarding" the installation, implementation and administration of Moodle "constitutes an undue burden."  (*Id.*)

After Wesleyan asserted these objections, Judge Arterton dismissed the plaintiff's Moodle-related negligence claim.  (ECF No. 90.)  She acknowledged that the plaintiff had "allege[d] that Moodle had known 'bugs' that Wesleyan failed to address," but noted that the complaint "lack[ed] any description of how the bugs led to the production of faulty Moodle logs on which Wesleyan relied in expelling her."  (*Id.* at 16.)  Thus, when it filed its opposition to the plaintiff's motion to compel, Wesleyan pointed out that "this Court dismissed Plaintiff's negligence claims regarding the installation, implementation and administration of Moodle."  (Opp'n at 19-20) (emphasis omitted).  It asserted that the "Plaintiff is . . . impermissibly attempting to circumvent this Court's order."  (*Id.* at 20.)

Wesleyan is correct that parties ordinarily cannot pursue discovery on claims that have been dismissed.  "As the U.S. Supreme Court has explained, 'it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken."  *Kalra v. Adler Pollock*

& *Sheehan, P.C.*, No. 3:18-cv-00260 (KAD) (TOF), 2020 WL 7828790, at *6 (D. Conn. Dec. 31, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).  "Based upon this language in *Oppenheimer*, judges in this district, as well as in other districts, have refused to allow parties to pursue discovery regarding claims that previously have been dismissed."  *Kopperl v. Bain*, No. 3:09-cv-01754 (CSH) (JGM), 2014 WL 1761956, at *1 (D. Conn. May 1, 2014) (citing cases); *see also Bourget v. Gov't Emps. Ins. Co.*, 313 F. Supp. 367, 372-73 (D. Conn. 1970), *rev'd on other grounds*, 456 F.2d 282 (2d Cir. 1972) (striking two affirmative defenses and then holding that "[s]ince both of these defenses are being ordered stricken, defendant's production motion accordingly must be denied").  In her briefs, the plaintiff does not identify any extant complaint allegation to which her Moodle-related discovery requests would be relevant.  (*See* Memo. at 23-27; Reply at 9-10.)

The plaintiff, however, does argue that Requests 6 through 11 are relevant to one of Wesleyan's affirmative defenses.  (*Id.*)  She notes that, after Judge Arterton dismissed her Moodle-related negligence claim, Wesleyan answered the amended complaint and asserted an affirmative defense of cheating.  (*See id.* at 15 (noting Wesleyan's assertion of a defense that "Plaintiff cheated during the exams in question"); *see also* Ans. at pp. 39-40 (asserting as an affirmative defense that plaintiff "cheated on examinations," "lied about cheating," *etc.*).)  She says that she expects the documents encompassed by Requests 6 through 11 to reveal "an alternative explanation to Wesleyan's affirmative defense that Plaintiff cheated."  (Reply at 9.)  Without using these terms, she says in substance that if Judge Arterton closed the door on Moodle discovery by dismissing the negligence claim, Wesleyan reopened it by asserting its cheating defense.  She contends that discovery into the installation, implementation and administration of Moodle may reveal that the

computer notations that Wesleyan regards as evidence of cheating were actually products of the "bugs" alleged in her initial complaint.

To justify the order that the plaintiff seeks, her theory should be supported by more than pure speculation.  "Fed. R. Civ. P. 26(b)(1) does not allow a party to roam in [the] shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Williams v. City of Hartford*, No. 3:15-cv-00933 (AWT), 2016 WL 3102001, at *2 (D. Conn. June 2, 2016) (quoting *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-01924 (CFD) (WIG), 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)).  Stated differently, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."  *Id.* (quoting *Wells Fargo Bank*, 2009 WL 585430, at *5)).  In this case, with the exception of one issue, the plaintiff does not even theorize how Moodle's alleged bugs would affect the outcome of any relevant factual dispute.

The one exception concerns how the Moodle system registers time.  Wesleyan says that it uncovered ironclad evidence of cheating by comparing the plaintiff's iPhone web search history with Moodle's time stamps.  (Memo. of L. in Supp. of Def.'s Mot. for Contempt and to Compel, ECF NO. 117, at 11.)  It says, for example, that the plaintiff's web search history shows her accessing Moodle at 9:11 a.m. on August 14, 2017 – during her CHEM 142 exam – and that Moodle's time log confirms access at exactly the same time.  (Decl. of J. Medeiros, ECF No. 117-10, ¶ 20.)  Yet the plaintiff counters that her phone may have been set to Coordinated Universal Time, and she suggests that the 9:11 a.m. entry may actually reflect Moodle access at 5:11 a.m. Eastern time – hours before her CHEM 142 exam began.  (*See* Pl.'s Memo. of L. in Opp'n to Wesleyan's Mot. for Contempt and to Compel, ECF No. 147, at 7-9.)  In rebuttal, Wesleyan notes that it was not only her iPhone that shows her accessing Moodle at 9:11 – the Moodle log did too.

(*See* Reply to Pl.'s Opp'n to Def.'s Mot. for Contempt and to Compel, ECF No. 165, at 1-3.)  But the plaintiff responds that this makes determining the time zone settings of the Moodle log all the more critical, because "if both the Moodle logs and the [iPhone] Internet search history display results in UTC, then the Internet searches and instances of Moodle access identified by and relied upon by Wesleyan to support the contention that Plaintiff cheated actually occurred hours before Plaintiff was taking the exams in question."  (Pl.'s Memo. of L. in Opp'n to Wesleyan's Mot. for Contempt and to Compel, ECF No. 147, at 9.)

Wesleyan protests that the "Plaintiff's time zone theories are baseless and unsubstantiated" (Reply to Pl.'s Opp'n to Def.'s Mot. for Contempt and to Compel, ECF No. 165, at 1), and that may ultimately prove to be the case.  But they are sufficiently outside the realm of a "fishing expedition" to support discovery.  Wesleyan claims to have conclusively established that the iPhone search history and the Moodle logs reflect the same time zone – and that, too, may ultimately prove to be true.  (*Id.*)  But the plaintiff is entitled to explore it in discovery.

The plaintiff's motion for an order overruling Wesleyan's objections to, and compelling compliance with, Requests 6 through 11 is accordingly granted in part and denied in part.  It is granted to the extent that Wesleyan is ordered to produce any responsive documents that concern how Moodle records or logs time, including the time zone used in the Moodle logs.  It is otherwise denied.

### III.   CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel is granted in part and denied in part, as follows:

- To the extent that the motion seeks an order overruling Wesleyan's objections to Interrogatories 3 and 4 and compelling responses to them, it is denied without prejudice to renewal.

- With respect to Requests for Production 4 and 5, the motion is granted to the extent that Wesleyan is ordered to produce responsive documents (a) concerning reports of Honor Code violations arising out of allegations of cheating (b) for the period 2012-2017.   Wesleyan shall redact any personally identifiable information, provided that the redactions are done in such a way that the plaintiff can tell which documents relate to the same student; *e.g.*, in all documents relating to student John Jones, his name shall be replaced with "Student 1;" in all documents relating to student Mary Martinez, her name shall be replaced with "Student 2;" *etc*.

- With respect to Requests for Production 6, 7, 8, 9, 10 and 11, the motion is granted to the extent that Wesleyan is ordered to produce responsive documents concerning how Moodle records or logs time, including the time zone used in the Moodle logs, and otherwise denied.

Wesleyan shall produce the documents that is has been ordered to produce by October 22, 2021.  D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall be made within fourteen (14) days of the filing of the Court's order.").   If it believes it has a basis for doing so, it may designate any such documents "Confidential" under the terms of the Standing Protective Order.  (ECF No. 6.)  The plaintiff may contest any such designation using the procedure set forth in paragraph (c) of that order.  (*Id.*)

This ruling and order is a "determination of [a] nondispositive motion[] . . . relating to discovery."  D. Conn. L. Civ. R. 72(C)(2).  As such, it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2.  It is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

Dated at Hartford, Connecticut this 8th day of October, 2021.

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge